**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
David J. McGlothlin, Esq. (SBN: 253265)
david@kazlg.com
Mona Amini, Esq. (SBN: 296829)
mona@kazlg.com
Gustavo Ponce, Esq. (SBN: 343430)
gustavo@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
Jai Flowers

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAI FLOWERS. on behalf of herself and those similarly situated, | Case No.: |
| Plaintiff, | **CLASS ACTION** |
| vs. | |
| CLOUD HEALTH SYSTEMS, LLC, d/b/a SUNRISE HEALTH, | **COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C §§ 227, ET SEQ. (TCPA)** |
| Defendant. | |
| | **DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

## CLASS ACTION COMPLAINT

Plaintiff, JAI FLOWERS (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against CLOUD HEALTH SYSTEMS, LLC d/b/a SUNRISE HEALTH (hereinafter "Defendant") for its violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*., (hereinafter the "TCPA"). In support, Plaintiff the following based upon personal knowledge, and upon information and belief.

## INTRODUCTION

1. Plaintiff brings this Class Action Complaint for damages, injunctive relief, and all other available legal or equitable remedies, challenging Defendant's unlawful actions in negligently and/or willfully contacting Plaintiff and the members of the proposed Class (as defined below) (collectively, the "Class Members") on their cellular telephones, in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq*., ("TCPA") and related regulations, including 47 C.F.R. § 64.1200(d), thereby invading Plaintiff's privacy.

2. Defendant, directly or through persons on its behalf, violates the TCPA and 47 C.F.R. 64.1200(c) and (d) by failing to honor opt-out instructions.

3. Plaintiff and Class Members received unwanted spam telemarketing text messages from Defendant without regard to the TCPA, and for individual privacy. This lawsuit challenges all telemarketing text messages that were sent by Defendant, or on Defendant's behalf, to Plaintiff and Class Members from approximately March 2020, through the date of preliminary approval of class certification.

4. The TCPA was designed to prevent telemarketing text messages like the ones described within this Complaint, and to protect the privacy of citizens like Plaintiff and the Class. The Federal Communications Commission (FCC) reports that unwanted calls and texts constitute its top consumer complaint. *See* Federal Communications Commission, *Stop Unwanted Calls and Texts* (Mar. 2, 2021), https://www.fcc.gov/consumers/guides/stop-unwanted-calls-and-texts (last visited



July 8, 2024).

5.     Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief including investigation conducted by Plaintiff's attorneys.

6.     The TCPA was enacted to protect consumers from unsolicited and unwanted telephone communications exactly like those alleged in this case.

7.     Plaintiff seeks an injunction requiring Defendant to cease all unsolicited phone messages to numbers on its internal opt out list, as well as an award of statutory damages and treble damages (for knowing and/or willful violations) for Plaintiff and members of the Class (defined below) per violation, together with court costs, and reasonable attorneys' fees.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, a federal statute.

9.     The Court has personal jurisdiction over Defendant because Defendant has its principal place of business in this District, Defendant conducts significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

11.     Defendant is subject to specific personal jurisdiction in this District because it has continuous and systematic contacts with this District through its principal place of business being in this District, its telemarketing efforts that target this District, and the exercise of personal jurisdiction over Defendant in this District does not offend traditional notions of fair play or substantial justice.

## PARTIES

12.     Plaintiff is, and at all times mentioned herein is a resident of the State of

California, County of San Bernardino. Plaintiff is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

13.     Defendant is a limited liability company with its principal address located at 100 Pine Street, Unit 500, San Francisco, CA, 94111.

14.     Defendant is, and at all times mentioned herein was a company and a "person," as defined by 47 U.S.C. § 153(39).

15.     Plaintiff is informed and believes, and thereon alleges, that at all times relevant, Defendant conducted business in the State of California.

16.     Whenever in this Complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## **TCPA BACKGROUND**

17.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy.…"  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

18.     The TCPA was designed to prevent calls and messages like the one described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

19.     The TCPA restricts telephone solicitations (*i.e.,* telemarketing), as well as violations of the TCPA's Do-Not-Call provision of 47 C.F.R. § 64.1200(c).

20.    In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer."   TCPA, Pub.L. No. 102-243, § 11.   Toward this end, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id*. at § 12; *see also, Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional finding on TCPA's purpose).

21.    As Judge Easterbrook of the Seventh Circuit explained in a TCPA case:

> The Telephone Consumer Protection Act […] is well known for its provisions limiting junk-fax transmissions.  A less litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered – and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

22.    Text messages are calls and are subject to the TCPA.  *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

23.    47 C.F.R. § 64.1200(a)(2) additionally states, with respect to advertisement and telemarketing calls—of which Defendant calls to Plaintiff are—that "[n]o person or

entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party . . . ."

24.    47 C.F.R. § 64.1200(f)(8) defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

25.    As of October 16, 2013, unless the recipient has given <u>prior express written consent,</u>[1] the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally:

- Prohibit solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Require that solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibit solicitations to residences that use an artificial voice or a recording.

- Prohibit any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.

---

[1] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

- Prohibit any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (*e.g.*, "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.

- Prohibit autodialed calls that engage two or more lines of a multi-line business.

- Prohibit unsolicited advertising faxes.

- Prohibit certain calls to members on a DNC.

26. Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (N.D. Ill., Dec. 31, 2012). Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

27. With respect to misdialed or wrong-number calls, the FCC recently clarified that "callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015). "If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have

constructive knowledge of such." *Id.* Thus, any second call placed to a wrong number violates the TCPA.

28. The TCPA provides for damages in the amount of $500 for each negligent violation and treble damages of $1,500 for each knowing or willful violation. *See* 47 U.S.C. § 227(b)(3).

## **FACTUAL ALLEGATIONS**

29. At all times relevant, Plaintiff was an individual residing within the State of California.

30. At all times relevant, Defendant conducted business in the State of California.

31. On or about March 11, 2024, Defendant began sending telemarketing text messages to Plaintiff's cellular telephone number ending in 4232 (the "Cell Phone").

32. The text message came from "Sunrise" asking if Plaintiff was interested in paying to being a weight loss journey. The message concluded with, "Text STOP to opt-out."

33. On the same day Plaintiff responded with the word "STOP" in an attempt to opt-out of any further telemarketing text message communications with Defendant.

34. Despite Plaintiff's express request that Defendant "STOP" sending Plaintiff further text messages, Defendant ignored Plaintiff's opt-out demand and sent Plaintiff five more telemarketing text messages after March 11, 2024.

35. Specifically, on or around March 25, 2024, Plaintiff received another telemarketing text message from Defendant advertising its weight loss program, and Plaintiff again responded "STOP."

36. Again, on or around March 27, 2024, Plaintiff received another telemarketing text message from Defendant advertising a sale on its weight loss program. Plaintiff once more responded "STOP."

37. Despite Plaintiff's three requests to opt out of the messages, on or around March 31, 2024, Plaintiff received yet another telemarketing text message from Defendant

advertising a sale on its weight loss program, and for the fourth time Plaintiff again responded "STOP."

38.     Yet again, on or around April 4, 2024, Plaintiff received another telemarketing text message from Defendant advertising a sale on its weight loss program. Plaintiff again responded "Stop."

39.     The text messages originated from telephone number 628-229-9041, a number which upon information and belief is owned and operated by Defendant.

40.     In an attempt to opt-out of any further telemarketing text communications with Defendant, Plaintiff on various occasions texted Defendant the word "stop." Defendant ignored Plaintiff's requests and continued to text promotional telemarketing messages despite Plaintiff's clear revocation of any alleged prior consent.

41.     Defendant's text messages were transmitted to Plaintiff's cellular telephone, and within the time frame relevant to this action.

42.     Defendant's text messages constitute telemarketing because they encouraged, the future purchase of investment in property, goods, or services, i.e., selling Plaintiff mortgage lending services.

43.     The information contained in the text message advertises Defendant's different products, Dependent sends to promote its business.

44.     Plaintiff received the subject texts within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district. Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district.

45.     Plaintiff is the subscriber and sole user of the Cell Phone and is financially responsible for phone service to the Cell Phone.

46.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national

do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

47. Defendant failure to honor opt-out instructions by Plaintiff and the Class members is indicative of Defendant's failure to 1) maintain written policies and procedures regarding its text messaging marketing; (2) provide training to its personnel engaged in telemarketing; and (3) maintain a standalone do-not-call list.

48. To the extent Defendant outsourced its telemarketing spam text messaging campaigns, it is nonetheless liable for texts that violate the TCPA.

49. Defendant is liable for third-party actions if it took steps to cause the telemarketing texts to be made, or if the telemarketing texts were made pursuant to Defendant's actual authority, apparent authority and/or ratification, or pursuant to joint enterprise or acting in concert liability.

50. Defendant had the ability and/or right to control the method and scope of the telemarketing text message campaigns sent to Plaintiff and the Class members.

51. Defendant had the ability and/or right to control the timing and approve, write, and review the content of the telemarketing text message campaigns sent to Plaintiff and the Class members.

52. Defendant authorized the use of its trade name in the telemarketing text messages sent to Plaintiff and the Class members.

53. Defendant knowingly accepted the marketing benefits of the telemarketing text messages sent to Plaintiff and the Class members, including the consumer leads generated through transmissions of the messages.

54. Given Defendant's control over the telemarketing text messaging campaigns at issue and/or its ratification of the campaigns, Defendant is vicariously liable for the violations alleged herein.

55. Defendant failed to keep, maintain, implement, and/or enforce policies and procedures to ensure compliance with the TCPA, and/or provide adequate oversight to ensure compliance with any policies it maintained.

56.     The telemarketing text messages at issue caused Plaintiff and putative Class Members harm. In addition to using their cellular data, storage, and battery life, they suffered invasion of privacy, aggravation, annoyance, frustration, distraction, and their seclusion was intruded upon, forcing them to divert attention away from their work, home life and other activities, inconvenience, wasted time, risk of future harm, causing disruption to their work, sleep, and other activities, and violations of their substantive statutory rights under the TCPA to remain free of unsolicited calls or messages.

57.     Plaintiff and Class Members had to spend wasted time away from work, family, and personal activities, and suffered aggravation, because of Defendant's unsolicited telemarketing text messages.

58.     For example, apart from forcing Plaintiff to spend time investigating the source of the text messages and invest time researching and hiring counsel, Plaintiff received some of the unsolicited telemarketing text messages while she was sharing personal and intimate time with family. This caused Plaintiff to stop to check her phone and waste time reviewing the messages to confirm they were not for an emergency purpose, causing specific injury, trespass, intrusion and disruption onto Plaintiff's personal and daily life.

59.     Because Plaintiff and Class Members continued to received telemarketing texts from Defendant after they texted "stop" revoking any conceivable consent, demonstrates the need for judicial intervention and injunctive relief to enjoin any continued and future harm.

60.     Despite opting out from Defendant contacting Plaintiff, Defendant sent several unsolicited telemarketing text messages to Plaintiff on her cellular telephone.

61.     Such telephone text messages constitute telephone solicitations pursuant to 47 C.F.R. § 64.1200(c), as they were an attempt to promote or sell Defendant's services.

62.     Upon information and belief, Defendant sent substantially similar, if not identical, unsolicited telephone messages to Plaintiff and thousands of other consumers who also opted out from communication from Defendant in violation of the TCPA.

63. Upon information and belief, at all relevant times, Defendant failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5).

64. Upon information and belief, Defendant did not make the telephone solicitations in error.

65. All of the unsolicited telephone messages by Defendant and/or its agents violated 47 U.S.C. § 227(b)(1).

66. Defendant's unsolicited phone messages caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

67. Defendant's phone messages also inconvenienced Plaintiff and caused disruption to Plaintiff's daily life.

68. Defendant's unsolicited phone messages caused Plaintiff actual harm. Specifically, Plaintiff estimates that she spent numerous hours investigating the unwanted phone messages including how they obtained Plaintiff's number and who the Defendant was.

69. Receiving Defendant's unsolicited phone messages drained Plaintiff's phone battery and caused Plaintiff additional electricity expenses and wear and tear on Plaintiff's phone and battery.

70. Furthermore, Defendant's phone messages took up memory on Plaintiff's phone. The cumulative effect of unsolicited phone messages like Defendant's poses a real risk of ultimately rendering the phone unusable for other purposes as a result of the phone's memory being taken up. *See* https://www.consumer.ftc.gov/articles/0350-text-message-spam#text (finding that voice message solicitations much like the text message solicitations sent by Defendant present a "triple threat" of identity theft, unwanted cell phone charges, and slower cellphone performance).

71. Defendant's text messages also can slow cell phone performance by taking up space on the recipient phone's memory. *See*

https://www.consumer.ftc.gov/articles/0350-text-message-spam#text (finding that spam voice messages much like text messages can slow cellphone performance by taking up phone memory space).

72. Through this conduct, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA.

73. Plaintiff was personally affected because Plaintiff was frustrated, distressed, disturbed, and felt harassed that Defendant and/or its agents continued to send unsolicited phone messages to Plaintiff's personal telephone.

74. Defendant's unsolicited phone messages forced Plaintiff to be deprived of the privacy and utility of Plaintiff's cellular phone by forcing Plaintiff to ignore or reject Defendant's disruptive text messages, and/or silence her cellular phone as a result of Defendant's incessant telephone solicitations.

75. The TCPA was intended to give individuals control over how and where they receive telephonic communications. When Defendant's sent unsolicited messages to Plaintiff without consent, after the opt out, Defendant failed to address or respect the limitations imposed by the TCPA. In doing so, Defendant invaded Plaintiff's privacy and violated the spirit and intent behind the TCPA.

76. Defendant's violations caused Plaintiff to suffer real and concrete harm in the form of intrusion and distraction, wasted time, wasted cellular phone battery, loss of cellular phone use, and natural and foreseeable stress and frustration in connection with the foregoing, all of which the TCPA was designed to prevent. *See, e.g.*, *Mey v. Got Warranty, Inc*., No. 5:15-CV-101, 2016 U.S. Dist. LEXIS 84972, at *8 (N.D.W. Va. June 30, 2016) ("[S]uch calls also cause intangible injuries, regardless of whether the consumer has a prepaid cell phone or a plan with a limited number of minutes. The main types of intangible harm that unlawful calls cause are (1) invasion of privacy, (2) intrusion upon and occupation of the capacity of the consumer's cell phone, and (3) wasting the consumer's time or causing the risk of personal injury due to interruption and distraction.").

77.     Through the aforementioned conduct, Defendant repeatedly violated the TCPA, 47 U.S.C. §§ 227, et seq. numerous times.

**STANDING**

78.     Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state: (a) a valid injury in fact; (b) which is traceable to the conduct of Defendant; and (c) is likely to be redressed by a favorable judicial decision. *See*, *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1547 (2016)*; Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

*The "Injury in Fact" Prong*

79.     Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as articulated in *Spokeo*. *Spokeo*, 136 S.Ct. at 1547.

80.     For an injury to be "concrete" it must be a *de facto* injury, meaning that it actually exists.  *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). In this case, Defendant sent a telephone solicitation to Plaintiff's cellular telephone. Such text messages are a nuisance, an invasion of privacy, and an expense to Plaintiff. All three of these injuries are concrete and *de facto*.

81.     An injury is "particularized," if it affects the plaintiff in a personal and individual way. *Spokeo*, 136 S. Ct. at 1548.  Here, Plaintiff's injury is particularized as Defendant invaded Plaintiff's privacy by sending multiple unsolicited text message solicitations to his cellular telephone after Plaintiff requested that Defendant stop.  Plaintiff became distracted, annoyed, and aggravated each time she received Defendant's unsolicited text messages.  All of these injuries are particularized and specific to Plaintiff, and are the same injuries suffered by each member of the putative Class.

*The "Traceable to the Conduct of Defendant" Prong*

82.     The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that its injuries are traceable to the conduct of Defendant.

83. Defendant's text messages are directly and explicitly linked to them. The text messages Defendant sent to Plaintiff indicate they were sent from Defendant. In addition, each text message references lending, refinancing, or rates, which is Defendant's main line of business. Defendant's text messages are the sole source of Plaintiff's and the Class Members' injuries.

**The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong**

84. The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

85. Plaintiff's Prayer for Relief includes a request for damages for the text messages Defendant sent, as authorized by statute. *See* 47 U.S.C. § 227(b)(3). These statutory damages were set by Congress and specifically redress the damages suffered by Plaintiff and the Class Members.

86. Further, Plaintiff's Request for Relief includes a request for injunctive relief and statutory damages for each text message made by Defendant to cellular numbers who opted out from any communication from Defendant and thus revoked consent to be contacted by Defendant, as authorized by statute in 47 U.S.C. § 227 of the TCPA. The injunctive relief and statutory damages were created by Congress and specifically redress the damages suffered by Plaintiff and the members of the putative class.

87. Because all standing requirements of Article III of the U.S. Constitution have been met, Plaintiff has standing to sue Defendant on the stated claims.

## CLASS ACTION ALLEGATIONS

88. Plaintiff brings this action pursuant to Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure individually and on behalf of the following Class (the "Class"), which is defined as follows:

> **Internal DNC Class: All persons within the United States who, within the four years prior to the filing of this Complaint, received any telemarketing text message from or**

**on behalf of Defendant, to said person's cellular telephone number *after* making a request to Defendant to not receive future telemarketing text messages.**

89.    Excluded from the Class are Defendant, its officers and directors, members of its immediate families and its legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

90.    Plaintiff reserves the right to redefine the Class and to add subclasses as appropriate based on discovery and specific theories of liability.

91.    Further, Plaintiff and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiff and the Class members via their telephones, whether cellular telephones or otherwise, for solicitation purposes, thereby invading the privacy of said Plaintiff and the Class members who opted out from any communication from Defendant, thereby causing annoyance to Plaintiff and the Class and also invading the privacy of Plaintiff and the Class.  Plaintiff and the Class members were damaged thereby.

92.    <u>Numerosity</u>: At this time, Plaintiff does not know the exact number of Class Members, but among other things, given the nature of the claims and that Defendant's conduct consisted of a standardized spam text messaging campaign electronically sent to particular telephone numbers, Plaintiff believes, at a minimum, there are greater than forty (40) Class Members. Plaintiff believes that the Class is so numerous that joinder of all members of the Class is impracticable and the disposition of their claims in a class action rather than incremental individual actions will benefit the Parties and the Court by eliminating the possibility of inconsistent or varying adjudications of individual actions.

93.    Upon information and belief, a more precise Class size and the identities of the individual members thereof are ascertainable through Defendant's records, including, but not limited to Defendant's texting logs and marketing records.

94.    Members of the Class may additionally or alternatively be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, fax notice, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by the Court.

95.    <u>Ascertainability</u>: The members of the Class are ascertainable because the Class is defined by reference to objective criteria. In addition, the members of the Class are identifiable in that, upon information and belief, their cellular telephone numbers, names and addresses can be identified in business records maintained by Defendant and/or by third parties.

96.    <u>Typicality</u>: As a person who received numerous telephone solicitations from Defendant without prior express written consent to receive such telephone solicitations, Plaintiff is asserting claims that are typical of the Class.  Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interests antagonistic to any member of the Class. Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same course of conduct that violates the TCPA.

97.    Plaintiff and members of the Class each received at least one telephonic sales text message, advertising Defendant's services, without prior express written consent, which Defendant sent or caused to be sent to Plaintiff and the members of the Class.

98.    Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff has had to suffer the burden and invasion of privacy of receiving unsolicited text messages to Plaintiff's cellular telephone from Defendant while Defendant had no express written consent to contact Plaintiff. Thus, Plaintiff's injuries are typical to Class Members.

99.    Plaintiff's claims, and the claims of the members of the Class, originate from the same conduct, practice and procedure on the part of Defendant.

100. Plaintiff's claims are based on the same theories, as are the claims of the members of the Class.

101. Plaintiff and Class Members were harmed by the acts of Defendant in at least the following ways: Defendant harassed Plaintiff and Class Members by illegally sending messages to their cellular phones without prior express consent. Plaintiff and the Class were damaged thereby.

102. <u>Adequacy</u>: Plaintiff is qualified to, and will fairly and adequately protect the interests of the members of the Class with whom she is similarly situated, as demonstrated herein. Plaintiff acknowledges that she has an obligation to make known to the Court any relationships, conflicts, or differences with any Class Member. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the Class. Plaintiff will vigorously pursue the claims of the members of the Class. Plaintiff has retained counsel experienced and competent in class action litigation. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. In addition, the proposed class counsel is experienced in handling claims involving consumer actions and violations of the TCPA. Plaintiff's counsel will assert, protect and otherwise represent the members of the Class. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.

103. <u>Predominance</u>: The questions of law and fact common to the members of the Class predominate over questions that may affect individual members of the Class. The elements of the legal claims brought by Plaintiff and Class Members are capable of proof at trial through evidence that is common to the Class rather than individual to its members.

104. <u>Commonality</u>: There are common questions of law and fact as to all members of the Class, including but not limited to the following:

a. Whether Defendant violated 47 U.S.C § 227(c)(2);

b. Whether Defendant violated 47 C.F.R. § 64.1200(d);

c. Whether Defendant can meet its burden of showing that it obtained prior express written consent to make such text messages;

d. Whether Defendant's conduct was knowing and willful;

e. Whether Defendant adhered to requests by Plaintiff Class members to stop sending text messages to their telephone numbers;

f. Whether Defendant keeps records of text recipients who revoked consent to receive text messages;

g. Whether Defendant has any written policies for maintaining an internal do not call list;

h. Whether Defendant is liable for damages, and the amount of such damages; and

i. Whether Defendant should be enjoined from such conduct in the future.

99. <u>Superiority</u>: A class action is superior to all other available methods for the fair and efficient adjudication of this matter because:

• If brought and prosecuted individually, the claims of the members of the Class would require proof of the same material and substantive facts.

• The pursuit of separate actions by individual members of the Class would, as a practical matter, be dispositive of the interests of other members of the Class, and could substantially impair or impede their ability to protect their interests.

• The pursuit of separate actions by individual members of the Class could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.

• These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the Class.

- The damages suffered by each individual member of the Class may be relatively modest, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the Class to redress the wrongs done to them.

- Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.

- The pursuit of Plaintiff's claims, and the claims of the members of the Class, in one forum will achieve efficiency and promote judicial economy.

- There will be little difficulty in the management of this action as a class action.

100. <u>Class-Wide Injunctive Relief</u>: Moreover, class certification is warranted because Defendant has acted on grounds generally applicable to Plaintiff and members of Class, thereby making appropriate final injunctive relief with respect to Plaintiff and Class Members as a whole. Plaintiff seeks injunctive relief on behalf of Class Members on grounds generally applicable to the entire Class in order to enjoin and prevent Defendant's ongoing violations of the TCPA, and to order Defendant to provide notice to them of their rights under the TCPA to statutory damages and to be free from unwanted text messages.

101. Defendant has acted or refused to act on grounds generally applicable to the members of the Class, making final declaratory or injunctive relief appropriate.

102. Plaintiff and the members of the Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the Class will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.

103.   A class action is a superior method for the fair and efficient adjudication of this controversy.  Class-wide damages are essential to induce Defendant to comply with applicable law. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

104.   Plaintiff and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful conduct.

105.   This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of Class Members and it expressly is not intended to request any recovery for personal injury and claims related thereto.

## COUNT I

### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

### 47 U.S.C. §§ 227, ET SEQ.

### (*On behalf of Plaintiff and the Internal DNC Class*)

106.   Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

107.   The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

108.   As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227, *et seq.*, Plaintiff and each member of the Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5). 47 C.F.R. § 64.1200(d), in relevant part, provides: "[n]o person or entity shall initiate any

call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards including:

*(1) Written policy.* Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) *Training of personnel engaged in telemarketing.* Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) *Recording, disclosure of do-not-call requests.* If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity. . .

(6) *Maintenance of do-not-call lists.* A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

109. Pursuant to 47 C.F.R § 64.1200, the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

"(e) The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991."

47 C.F.R. § 64.1200(e)

110. Plaintiff and Class members made requests to Defendant not to receive telemarketing text messages from Defendant.

111. Defendant failed to honor Plaintiff's and the DNC Class members' opt-out requests.

112. At all relevant times, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

113. Defendant sent unsolicited and unauthorized telephone messages to the cellular telephones of Plaintiff and the Class members, cellular telephones which were on Defendant's internal DNC to Plaintiff and the Class.

114. Defendant knew that it did not have prior express written consent to send these text messages, and knew or should have known that it was sending text messages to cellular numbers on Defendant's internal DNC in violation of the TCPA.

115. Defendant willfully or knowingly sent telemarketing text messages o Plaintiff's and Class members' cellular telephone numbers on Defendant's internal DNC. For instance, Defendant could have determined from a review of its own business records that it could not contact Plaintiff and/or Class members yet disregarded such information and placed illegal and unwanted solicitation text messages.

116. Defendant's unsolicited text messages caused Plaintiff and members of the Class actual harms including, but not limited to, invasion of their personal privacy, aggravation, inconvenience, nuisance and disruption in their daily lives, reduction in cellular telephone battery life, data, and loss of use of their cellular telephones.

117. Upon information and belief, Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing messages made by or on behalf of their behalf, pursuant to 47 C.F.R. § 64.1200(d).

118. Defendant violated the requirements of section 64.1200(d) by failing to (1) maintain the required written policies; (2) provide training to its personnel engaged in telemarketing; and (3) maintain a standalone do-not-call list.

119. Because Defendant knew or should have known that Plaintiff's and Class

Members' cellular telephone numbers were on Defendant's internal DNC, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

120.    Because Plaintiff and members received more than one text message in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200(d), as described above, Defendant violated 47 U.S.C. § 227(c)(5).

121.    As a result of Defendant's violations, Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every willful or knowing violation, pursuant to 47 U.S.C. § 227(c)(5)(C) or in the alternative an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

122.    Plaintiff and the Class are also entitled to and seek injunctive relief, pursuant to 47 U.S.C. § 227(c)(5)(A), prohibiting such conduct in the future.

123.    Plaintiff and class members also suffered damages in the form of invasion of privacy.

124.    Plaintiff also seeks an award of attorneys' fees and costs on behalf of Plaintiff and the Class.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, respectfully requests the following relief against Defendant:

- An order certifying this matter as a class action with Plaintiff as Class Representative, and designating Plaintiff's counsel as Class Counsel.

- An order declaring that Defendant's actions, as set out above, violate the TCPA and its implementing regulations;

- Statutory damages of $500 per text message, for each TCPA violation;

- Willful damages at $1,500 per text message, for each TCPA violation;

- Injunctive relief prohibiting Defendant from engaging in such conduct in the future;

- An award of attorneys' fees and costs to counsel for Plaintiff and the Class;
- Pre-judgment and post-judgment interest on monetary relief; and
- All other and further relief as the Court deems necessary, just, and proper.

### **<u>DEMAND FOR JURY TRIAL</u>**

125.  Plaintiff, individually and on behalf of the Class, demands a jury trial on all issues so triable.

Dated: July 19, 2024                    Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: *<u>/s/ Gustavo Ponce, Esq.</u>*
   Abbas Kazerounian, Esq.
   David J. McGlothlin, Esq.
   Mona Amini, Esq.
   Gustavo Ponce, Esq.
   *Attorneys for Plaintiff*